1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

7

8

9

10

11

12

| | | |
|---|---|---|
| GREGORY J. SOAPES, | ) | |
| Plaintiff, | ) | 3:05-CV-1273-RCJ-GWF |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| J. PAVOE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

13      This matter comes before the Court on Defendants' Motion to Dismiss or, in the

14  alternative, Motion for Summary Judgment (#34).  Plaintiff, an inmate formerly incarcerated at

15  Nevada's High Desert State Prison ("HDSP"), brings a 42 U.S.C. § 1983 action against prison

16  officials for violations of his First, Eighth, and Fourteenth Amendment rights.  The Court has

17  considered the motions and the pleadings on file.  Pursuant to the following analysis,

18  Defendants' Motion to Dismiss and/or Summary Judgment is *granted*.

19                                          **BACKGROUND**

20      Plaintiff Gregory J. Soapes, pleading pro se, seeks injunctive relief and damages for

21  alleged violations of his First, Eighth and Fourteenth Amendment rights.  In Count I of his

22  Complaint, Plaintiff alleges that Defendant Pavao (erroneously named as "J. Pavoe") retaliated

23  against Plaintiff after Plaintiff indicated his intent to assert his First Amendment right to file a

24  grievance against Defendant Pavao.  (*See* #23-1 at 4-5.)  Plaintiff claims that he was in the

25  prison's law library on November 29, 2004, making copies and mailing out documents.  (*Id.* at

4.)  Though he was not on the access list, Plaintiff used the law library for about an hour.  (*Id.* at 4-5.)  When Plaintiff sought to log his mail on the prison mail log, Defendant Pavao objected and told Plaintiff that he would need to sign up on the following week's access list if he wanted to have "legal mail logged and copied." (*Id.* at 4.)  Plaintiff stated that he would file grievances against that policy as he believed the policy should be to allow law library access "when necessary." (*Id.* at 4.)  Defendant Pavao then ordered Plaintiff to leave the library with an escort. (*Id.* at 4.)  Plaintiff failed to obey and instead asked for permission to stay in the library, eventually becoming belligerent.   Plaintiff claims that Defendant Pavao "yelled that he was having plaintiff removed from the law library and put in a holding cell to 'teach plaintiff a lesson.'" (*Id.* at 4.)  Plaintiff alleges he was then taken to a holding cell for 31 hours.  (*Id.* at 5.)

Plaintiff argues that Defendant Pavao's actions violate his First and Fourteenth Amendment rights.  Specifically, Plaintiff alleges that Defendant Pavao violated his First Amendment right "to petition for redress of grievances without being retaliated against." (*Id.* at 5.)  He alleges further that his Fourteenth Amendment due process rights were violated because Defendant Pavao's actions "harmed plaintiff and [were] not narrowly tailored to advance a legitimate correctional goal." (*Id.* at 5.)

In Count II of his complaint, Plaintiff alleges that Defendant Provencal (erroneously named as "Lt. Prevencial") violated his First Amendment right to file grievances, his Eighth Amendment right to be protected against cruel and unusual punishment, and his Fourteenth Amendment due process rights. (*Id.* at 5.) Specifically, Plaintiff alleges that a corrections officer under Defendant Provencal "refused to bring a grievance form" to Plaintiff while Plaintiff was in the holding cell, despite Plaintiff's requests. (*Id.* at 5.)  Additionally, Plaintiff claims he was subjected to cruel and unusual punishment by being placed in a holding cell "for 31-hours in a bare-concrete floored cell with no bedding on the coldest day recorded in Nevada history.

1    Plaintiff was also denied food, hygiene items, i.e., toothbrush, toothpaste, soap, [and] towel."

2    (*Id.* at 3.)  Plaintiff claims he was finally provided with a mattress without bedding at 3:30 or

3    4:00 a.m., some nineteen hours after he was placed in the holding cell.  (*Id.* at 5.)  Plaintiff

4    alleges that he remained in the holding cell until about 4:00 p.m., a total of about thirty-one

5    hours.  (*Id.* at 5.)  Finally, Plaintiff claims that Defendant Provencal violated his Fourteenth

6    Amendment due process rights.

7         On October 21, 2005, Plaintiff filed a Civil Rights Complaint Pursuant to 42 U.S.C.  §

8    1983 against Defendants.  (#23.)  In an Order filed March 23, 2006, Counts 3 and 4 of the

9    Complaint were dismissed *sua sponte*.  (#9.)  Plaintiff appealed the Court's Order to the Ninth

10   Circuit on April 23, 2006, and the Ninth Circuit dismissed Plaintiff's appeal on July 10, 2006,

11   for lack of jurisdiction.  (#15, #26.)  Defendants now bring a Motion to Dismiss and/or Summary

12   Judgment under Rule 12(b)(6) and Rule 56, alleging that the Plaintiff's remaining claims lack

13   evidentiary support and fail as a matter of law.  (#34.)

**DISCUSSION**

14

15   **I.    Legal Standards of Review**

16        **A. Summary Judgment Standard**

17        If a motion to dismiss presents matters outside of the pleadings, the motion shall be

18   treated as one for summary judgment.  Fed. R. Civ. P. 12(b)(6).  Because Defendants' Motion

19   to Dismiss presents matters outside of the pleadings, the Court will treat it as a motion for

20   summary judgment pursuant to Fed. R. Civ. P. 56.

21        The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

22   as to the material facts before the court.  *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

23   F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment as a matter

24   of law where, viewing the evidence and the inferences arising therefrom in favor of the non-

25                                    Page 3 of  13

movant, there are no genuine issues of material fact in dispute.  Fed. R. Civ. P. 56©; *Bagdadi v. Nazari*, 84 F.3d 1194, 1197 (9th Cir. 1996).  A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.  See *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982).  Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

As summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party.  *Bagdadi*, 84 F.3d at 1197.  Although allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), he "does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case to avert summary judgment."  *Escobar v. Crosby*, 363 F. Supp. 2d 1361, 1364 (S.D. Fla. 2005).

### B.  Additional Burden for Prisoners Seeking Permanent Injunctive Relief Against Prison Officials Under the Prison Litigation Reform Act ("PLRA")

If an inmate's lawsuit contains a prayer for permanent injunctive relief against prison officials, the inmate must satisfy an additional burden to overcome a motion for summary judgment, as imposed by the PLRA, which is codified at 18 U.S.C. § 3626.  Specifically, the statute provides:

> The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(1)(A).  The Court has considered these additional factors as to Plaintiff's claim for injunctive relief under the RLUIPA.

## II.    Legal Analysis

To succeed on a § 1983 action, Plaintiff must prove: (1) the Defendants' conduct was committed under color of state law; and (2) the conduct deprived Plaintiff of his constitutional rights. *West v. Atkins*, 487 U.S. 42, 48 (1988). He must also show that Defendants lack qualified immunity for their actions. In this case, Plaintiff alleges that Defendants violated his: (1) First Amendment right to file a grievance; (2) Fourteenth Amendment rights of access to the law library and logged mail; and (3) Eighth Amendment right to be free from cruel and unusual punishment. In his Complaint, Plaintiff indicated he was seeking damages from both Defendants in their individual capacity only, which makes his request for damages procedurally valid. *See, e.g., Carey v. Nevada Gaming Control Board*, 279 F.3d 873, 879 (9th Cir. 2002) (noting that damages are not available against state officers sued in their official capacities).

Defendants argue that they are protected by qualified immunity because Plaintiff has failed to bring evidence adequately supporting his claims of alleged constitutional deprivations. In *Saucier v. Katz*, the Supreme Court held "[q]ualified immunity is an entitlement not to stand trial or face the burdens of litigation." 533 U.S. 194, 200-01 (2001). A defendant acting under color of state law is entitled to qualified immunity if: (1) the defendant did not deprive Plaintiff of a constitutional right; or (2) the right was not clearly established and the defendant acted in an objectively reasonable manner given the circumstances. *Id.*

In analyzing whether Plaintiff's constitutional rights were violated, it should first be noted that while prisoners maintain constitutional rights, these rights are limited by legitimate correctional needs. **"**Admittedly, prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Additionally, "[d]iscipline by prison officials in response to

a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id.* "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell v. Procunier*, 417 U.S. 817, 823 (1974). "The administration of a prison is at best an extraordinarily difficult undertaking." *Hudson v. Palmer*, 468 U.S.517, 526-27 (1984). Accordingly, "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Sandin*, 515 U.S. at 482.

### A. First Amendment Claims

#### 1. Retaliation Claim

Plaintiff first alleges that Defendant Pavao retaliated against Plaintiff's expressed intent to exercise his First Amendment right to file grievances. Plaintiff claims that Defendant Pavao retaliated against Plaintiff by: (1) placing Plaintiff in a holding cell after he threatened to file grievances, and (2) denying Plaintiff access to the law library. In addition to showing a First Amendment violation, "a successful retaliation claim requires a finding that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Pratt*, 65 F.3d at 806.

It is well established that inmates in the prison systems of the United States have the right to use and access the prison's law library. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). Nevertheless, "the Constitution does not guarantee a prisoner unlimited access to a law library." *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985). The right of access is subject to reasonable restriction, especially where such restrictions are imposed for security reasons. *Toussaint v. McCarthy*, 801 F.2d 1080, 1109-10 (9th Cir. 1986) *cert. denied* 481 U.S. 1069 (1987). Prison administrators are free to

1    define their own procedures for prisoners' use of their respective law libraries. *See Sandin*, 515

2    U.S. at 482.

3    Defendants assert that the prison's procedures, including those dealing with the law

4    library, "are in place to ensure the safety and security of the administration." (#34 at 3.)

5    According to Defendant Pavao, who was employed as the Law Library Supervisor at the HDSP,

6    "there is no regulation in place that would require logging Inmate's mail." (*Id.* at 32.) He

7    testified further that access to the law library "is restricted to authorized personnel and inmates

8    on the access list." (*Id.* at 32.) This policy exists for two reasons: (1) the capacity of the prison's

9    law library is limited, and (2) there is no mixing of custody level of the inmates who have access

10   to the law library. (*Id.* at 13.) Defendant Pavao has adequately established that there are

11   legitimate correctional goals with respect to regulating use of the law library.

12                              **a.      Retaliation by Placement in Holding Cell**

13   Plaintiff alleges that Defendant Pavao retaliated against him by having him placed in

14   detention. (#23-1 at 27.) The facts, even as alleged by Plaintiff, do not bear this out. Although

15   Plaintiff claims that he had requested access to the law library for November 29, 2004, Plaintiff

16   admits that he was not on the access list that day. (*Id.* at 4, 6.) It was therefore reasonable and

17   legitimate for Defendant Pavao to request that Plaintiff leave the law library because he was not

18   authorized to be there. Furthermore, Defendant Pavao only had Plaintiff placed in a holding cell

19   after Plaintiff refused to leave the law library when ordered to do so. Therefore, although

20   Plaintiff claims he was placed in a holding cell as a result of Plaintiff exercising his First

21   Amendment rights, he has not produced sufficient evidence to survive a motion for summary

22   judgment.

23   Based on the foregoing, the Court finds that Plaintiff cannot show that Defendant Pavao's

24   actions were not made in pursuance of a legitimate correctional goal and that his actions were

25                                    Page 7 of  13

1   not tailored narrowly enough to achieve such goals.  Therefore, because Plaintiff has not

2   adequately plead facts and presented evidence supporting the retaliation violation, Defendant

3   Pavao is entitled to qualified immunity pursuant on this claim.

4                          **b.  Retaliation by Denial of Law Library Access**

5            Plaintiff alleges additional retaliation by claiming that Defendant Pavao denied Plaintiff

6   access to the law library after the incident on November 29, 2004.  Plaintiff has asserted that

7   Defendant Pavao's actions violated his right to use the prison law library. Specifically, Plaintiff

8   states that Defendant Pavao "further retaliated against me by not scheduling me for law library

9   for week of 11-29-06, and scheduling me for only 1-one morning am session for the week of

10  December 6, 2004 which was canceled." (*Id.* at 30.)  Although it is clearly established law that

11  a prisoner may not be totally denied access to a law library, it is not clear that a withholding of

12  that privilege for a week, or even two weeks, is a violation of that right.  Because Plaintiff fails

13  to demonstrate that it is clearly established law that a prisoner cannot be denied access to a law

14  library for one or even two weeks, his claim fails under *Saucier*.  His claim also fails under the

15  *Pratt* analysis because Plaintiff cannot prove that Defendant Pavao's actions were not in

16  furtherance of legitimate correctional goals.

17                          **2.  Denial of Right to File Grievances**

18           In Count II of his Complaint, Plaintiff claims that Defendant Provencal violated his First

19  Amendment right to file grievances after he requested, but was not provided with, a grievance

20  form while he was in the holding cell.  The Ninth Circuit has held that "a prisoner has no

21  constitutional right to prison grievance procedures." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.

22  1988), *cert. denied*, 488 U.S. 898 (1988).

23           Plaintiff's claim that his First Amendment right to file grievances was violated fails.

24  First, Plaintiff's argument fails because Plaintiff does not have a constitutional right to prison

25                                      Page 8 of  13

grievance procedures.  Second, even if there was a constitutional right to file prison grievances, by his own admission he filed an informal grievance, a first and second level grievance, and he does not allege that his right to file grievances was denied after he was removed from the holding cell.  (#23-1 at 3.)  It is apparent that Plaintiff was able to file grievances two days after his release, as evidenced by an exhibit to his Complaint.  (*Id.* at 35.)  Therefore, this claim must be dismissed.

**B.  Eighth Amendment Claim**

Plaintiff claims that his Eighth Amendment rights were violated by his 31-hour placement in a holding cell.  The Eighth Amendment guarantees that "cruel and unusual punishments [shall not be] inflicted."  U.S. CONST. amend. VIII.  "[O]nly the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  To prove cruel and unusual punishment, a prisoner must demonstrate "extreme deprivations."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Unnecessary and wanton inflictions of pain include those that are "totally without penological justification."  *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).  Prisoners challenging the conditions of their confinement under the Eighth Amendment must show "deliberate indifference" by the responsible officials.  *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991).

The courts have not established a protectable interest in remaining free from administrative segregation.  *Gotcher v. Wood*, 122 F.3d 39, 39 (9th Cir. 1997).  However, the conditions of administrative segregation must be such that "[p]rison officials may not deprive prisoners of the basic necessities of life."  *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982).  "Prison officials must provide all prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety," and to "deprive prisoners in isolation, segregation, or protective custody of any of these violates the Eighth Amendment."  *Id.*  However, "[t]he

Page 9 of  13

1    circumstances, nature, and duration of a deprivation of . . . necessities must be considered in

2    determining whether a constitutional violation has occurred." *Johnson*, 217 F.3d at 731.

3            In this case, Plaintiff claims he was placed in administrative segregation "for 31-hours

4    in a bare-concrete floored cell with no bedding on the coldest day recorded in Nevada history.

5    Plaintiff was also denied food, hygiene items, i.e., toothbrush, toothpaste, soap, [and] towel."

6    (#23-1 at 3.)  Plaintiff's claim fails on two fronts.  First, Plaintiff fails to bring sufficient

7    admissible evidence to support an Eighth Amendment violation.  The only support Plaintiff

8    provides are his own two affidavits (#23-1 at 13, and #36 at 33) and the affidavits of two fellow

9    prisoners (#23-1 at 16-23).  As for Plaintiff's affidavits, they are characterized by a lack of

10   foundation, conclusory allegations, and hearsay.  Additionally, Plaintiff has failed to adequately

11   establish that he suffered an infliction of pain, and that prison officials were deliberately

12   indifferent to his suffering.  There is no evidence that he was deprived of "adequate food,

13   clothing, shelter, sanitation, medical care, and personal safety" for a significant period of time.

14   *Johnson*, 217 F.3d at 731.  Notwithstanding that Plaintiff's version of the facts differs from that

15   of Defendants, he must go beyond the pleadings and bring adequate admissible evidence to

16   create a genuine issue of material fact worthy of denying summary judgment.  Plaintiff has failed

17   to fulfill this burden.

18           Second, even if Plaintiff were to create a question of material fact as to whether his

19   version of the facts is correct, he additionally fails to show that the law was so clearly established

20   that Defendant's should have known that the conditions of Plaintiff's confinement violated the

21   Eighth Amendment.  Under the Eighth Amendment, Plaintiff has the heavy burden of showing

22   "extreme deprivation" that are "totally without penological justification." *See Hudson*, 503 U.S.

23   at 9; *Gregg*, 428 U.S. at 183.  Under the facts alleged, it is not clear that Defendants should have

24

25                                Page 10 of  13

1   known they were violating clearly established rights in placing Plaintiff in the holding cell.

2   Therefore, Plaintiff's Eighth Amendment violation fails.

3         **C. Fourteenth Amendment Claims**

4         Plaintiff claims that his Fourteenth Amendment rights were violated by his removal from

5   the law library and placement in a holding cell.  The Procedural Due Process Clause of the

6   Fourteenth Amendment protects citizens from the government depriving them of liberty interests

7   without affording a process wherein the citizen can be heard.  "The fundamental requirement of

8   due process is the opportunity to be heard."  *Parratt v. Taylor*, 451 U.S. 527, 540 (1981).  In

9   procedural due process claims, "the deprivation by state action of a constitutionally protected

10   interest . . . is not itself unconstitutional; what is unconstitutional is the deprivation of such an

11   interest without due process of law." *Florida Prepaid Postsecondary Education Expense Board*

12   *v. College Savings Bank*, 527 U.S. 627, 642-43 (1999).

13         However, "the fact that prisoners retain rights under the Due Process Clause in no way

14   implies that these rights are not subject to restrictions imposed by the nature of the regime to

15   which they have been lawfully committed . . . . [T]here must be mutual accommodation between

16   institutional needs and objectives and the provisions of the Constitution that are of general

17   application."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citations omitted); *see also Sandin*

18   *v. Conner*, 515 U.S. at 478 ("*Wolff*'s contribution . . . derive[s] . . . from its intricate balancing

19   of prison management concerns with prisoners' liberty in determining the amount of process

20   due.").

21         The necessary predicate to a due process claim is a deprivation of a protected interest.

22   In general, "administrative segregation is the sort of confinement that inmates should reasonably

23   anticipate receiving at some point in their incarceration."  *Hewitt v. Helms*, 459 U.S. 460, 468

24   (1983).  Such confinement therefore does not typically implicate a protected liberty interest.  In

25                                    Page 11 of  13

1    *Sandin*, however, the Supreme Court held that administrative segregation may implicate a liberty

2    interest protected by the Due Process Clause if it "imposes [an] atypical and significant hardship

3    on the inmate in relation to the ordinary incidents of prison life," or if it inevitably increases the

4    duration of the sentence imposed.  515 U.S. at 484, 487.

5              Plaintiff alleges in Counts I and II that Defendants violated his procedural due process

6    rights.  First, with respect to Count I, Plaintiff alleges that Defendant Pavao's actions in having

7    Plaintiff removed from the library "harmed plaintiff and [were] not narrowly tailored to advance

8    a legitimate correctional goal." (#23-1 at 5.)  The Associate Warden of Operations at the HDSP

9    testified that "there is no regulation in place that would require (sic) to log Inmate's mail" and

10   that access to the prison's law library "is restricted to . . . inmates on the access list." (#34 at 28,

11   31-32.)  By his own admission, Plaintiff used the law library even though he was "not on the

12   access list," and he did not immediately obey when he was ordered to leave.  (#23-1 at 4.)

13   Plaintiff provides no evidence that a protected liberty interest was denied.  The administrative

14   segregation in this reasonable given the circumstances and the prison's need to maintain prison

15   safety.  Therefore, Plaintiff's Due Process claim fails.

16                        **D.  Lack of Standing as to "Similarly Situated Prisoners"**

17             Plaintiff seeks injunctive relief for himself and "similarly situated prisoners." (#23-1 at

18   10.)  Because Plaintiff is not an attorney and has no license to practice law in Nevada or

19   elsewhere, he has no authority to appear as an attorney for others.  *Lebron v. Commissioner John*

20   *Armstrong*, 289 F. Supp. 2d 56, 58-59 (D. Conn. 2003).  Additionally, Plaintiff lacks standing

21   to bring claims alleging misconduct directed at other prisoners.  *Martin v. Sargent*, 780 F.2d

22   1334, 1337 (8th Cir. 1985); *Rose v. City of Los Angeles*, 814 F. Supp. 878, 881 (C.D. Cal. 1993).

23   Therefore, Plaintiff cannot represent the interests of other inmates.

24

25                                          Page 12 of  13

**E.  Injunctive Relief**

Plaintiff, in his Complaint, seeks injunctive relief against Defendants.  (*Id.* at 11.)  Specifically, Plaintiff asks the Court to order Defendants to refrain from depriving Plaintiff "of basic necessities, food, clothing and grievance forms."  (*Id.* at 11.)  However, Plaintiff was transferred from the HDSP and is currently incarcerated at the Florence Correctional Center in Florence, Arizona.  (#34 at 23.)  Courts have held that when an inmate is transferred or otherwise leaves a correctional institution, a claim for equitable relief is moot because he is no longer subject to the same conditions of confinement.  *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986); *Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985); *Martin v. Sargent*, 780 F.2d 1334, 1337 (9th Cir. 1985).

Therefore, Plaintiff's transfer from HDSP moots any claim for injunctive relief because he is no longer subject to the same conditions of confinement at HDSP.

## CONCLUSION

Pursuant to the foregoing analysis, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss/Motion for Summary Judgment (#22) is *granted*.  Defendants have demonstrated that they acted reasonably and according to compelling state interests in disciplining Plaintiff for failure to leave the law library, and Plaintiff has failed to meet his burden to set forth specific facts showing that there is a genuine issue of material fact for trial

DATED:          September 11, 2007

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE

Page 13 of  13